[Crim. No. 675. Third Appellate District.—February 27, 1923.]

THE PEOPLE, Respondent, v. JAMES PRYOR, Appellant.

[1] INTOXICATING LIQUORS—VIOLATION OF COUNTY ORDINANCE—SUFFI
CIENCY OF EVIDENCE.—In this prosecution for manufacturing, selling and having in possession intoxicating liquor in violation of a
county ordinance, the evidence is sufficient to support the verdict.

APPEAL from a judgment of the Superior Court of
Tuolumne County. J. A. Smith, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

J. P. Carey for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones,
Deputy Attorney-General, for Respondent.

BURNETT, J.—Defendant was charged in three separate counts of an information with manufacturing, selling,
and having in his possession "certain intoxicating liquor,
to wit, brandy then and there containing one-half of one
per cent or more of alcohol by volume" in violation of a
certain ordinance of the county of Tuolumne. He was convicted on all the counts and appeals from the judgment.

[1]    The only point made is that the evidence is insufficient to support the verdict, but there is no merit whatever
in the contention.

As to the first count appellant states his position as follows: "The first charge, the manufacture of liquor was
placed before the jury on a presumption, there was no evidence that alcoholic liquor had been manufactured, the only
evidence adduced to sustain said charge was the finding of a
steamer and some spoiled or decayed grain in a bath-room
of appellant's house, and a tube that was found by a third
party in a spring adjacent to the house." Herein appellant
is in error. William Sweeney, the sheriff of the county,
testified that on May 21, 1922, he went to the place occupied by defendant, and in response to the question, "While
you were there on this particular occasion did you find any
alcoholic liquors or a still or any other evidence of the
manufacture of alcoholic liquor?" he replied: "Yes, Mr.

Pryor delivered a bottle of liquor to me from his bedroom and there was a part of a bottle in another part of the house, and a small still in the bathtub, and some material there fermenting in a tub—made from a sawed-off barrel.'' He further testified that the material in the tub was barley, that it was ''fermenting like you find it in all places where liquor is made''; that ''from my past experience finding in a number of places liquor fermenting . . . I had seen it in a number of places, seen it working, going through the same process'' he ''took it to be for the manufacture of alcoholic liquor.'' He further testified that the defendant did not deny the ownership of the ''still.''

Austin Morales also testified that for a time he stopped at the ''Pryor place''; that while there he saw a ''still'' upon the property, ''there was mash in the barrel in the bathroom; there was corn and yeast,'' that he saw ''a copper boiler and a coil and cooler''; that he took the ''still and elbow'' at the direction of Mr. Pryor, the defendant, to a certain garage and left it there for two days to get it fixed; ''Mr. Pryor sent me back to the gentlemen that owned the garage and they didn't have it fixed and he wrapped it up and in a short time he took it to Stockton.'' The record discloses other circumstances in line with the foregoing, but we have quoted sufficiently to justify the conclusion that defendant was engaged in the manufacture of intoxicating liquor.

There is abundant evidence also to support the other two counts. We shall not segregate it, as the same testimony relates to both.

One Dolly Harris testified that she was acquainted with the defendant; that she was at his place on May 21, 1922; that she ''asked Mr. Pryor for a drink; at first he said he wouldn't give me none and then he told my sister, Edna Keaton (who was working for Mr. Pryor) to bring me a drink''; that she had several drinks, and paid therefor the sum of three dollars; that the liquor was strong and made her drunk.

Morales, who accompanied her to the place, testified that he saw Dolly Harris go into Mr. Pryor's house; that she was sober when she went in and was under the influence of liquor when she came out; that she had $4.50 when she went in and $1.50 when she came out; that he saw Mr. Pryor

"standing in the yard and I called her to come out and she didn't come out so I went in and asked him to call her, and he called and she came out. That is she came stumbling out."

It may be added that two bottles of liquor were delivered by the defendant to the sheriff on said date; that their contents were analyzed by a chemist and found to contain over fifty per cent of alcohol.

The case is so simple and clear as to demand no further consideration.

We may conclude with the statement that the presiding judge seems to have manifested the utmost concern to protect all the rights of the defendant and we find no error in the record.

The judgment is affirmed.

Finch, P. J., and Hart J., concurred.